UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

—————

JOHN NUNNALLY,

                Plaintiff,

v.

UNKNOWN FISK et al.,

                Defendants.

_____/

Case No. 1:24-cv-224

Honorable Jane M. Beckering

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has filed a motion for leave to proceed *in forma pauperis*. (ECF No. 2.) The Court will grant Plaintiff's motion because it reasonably appears that paying the cost of the filing fee in one lump sum would impose an undue financial hardship. *Prows v. Kastner*, 842 F.2d 138, 140 (5th Cir. 1988).

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's

federal claims against Defendants Fisk, Peterson, Schultz, Hansen, Broin, Forton, Pelky, Mackey, Bassett, Cloust, and Erway for failure to state a claim. Plaintiff's state law claims against Defendants Fisk, Peterson, Schultz, Hansen, Broin, Forton, Pelky, Mackey, Bassett, Cloust, and Erway will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

Moreover, to the extent Plaintiff intended to name Officer Clevo as a Defendant, Officer Clevo will be dismissed for failure to state a claim. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Benson and Clark: (1) Plaintiff's official capacity claims for damages; (2) Plaintiff's Fourteenth Amendment due process claims; and (3) Plaintiff's civil conspiracy claims.

The following claims against Defendants Benson and Clark remain: (1) Plaintiff's official and personal capacity claims seeking expungement of his class III "passing" misconduct and class II insolence misconduct; (2) Plaintiff's First Amendment retaliation claims; (3) Plaintiff's Fourteenth Amendment equal protection claim against Defendant Benson; and (4) Plaintiff's state law claims against Defendants Benson and Clark.

## Discussion

### I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains, however, occurred at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. Plaintiff sues the following ECF personnel: Deputy Warden Unknown Erway, Assistant Deputy Warden Unknown Cloust, Grievance Coordinator T. Bassett, Lieutenant/Class II Hearing Officer Unknown Mackey, Resident Unit Manager Unknown Pelky, and Correctional Officers Unknown Fisk, Unknown Peterson, Unknown Schultz, Unknown

2

Hansen, Unknown Broin, Unknown Benson, Unknown Forton, and Unknown Clark. Plaintiff indicates that he is suing all Defendants in their official and personal capacities. (Compl., ECF No. 1, PageID.2–4.)

Plaintiff alleges that January 16, 2023, was Martin Luther King, Jr.'s birthday, and Defendant Fisk was working in the unit. (*Id.*, PageID.8.) Defendant Fisk saw an inmate who was on sanctions out in the dayroom and asked the inmate why he was out. (*Id.*) The inmate replied, "[Loss of privileges (LOP)] is suspended for the Federal holiday." (*Id.*) Defendant Fisk responded, "I called the Control Center, and they said nothing was suspended." (*Id.*)

Plaintiff overheard this conversation and asked Defendant Fisk why there was no holiday meal. (*Id.*) Defendant Fisk responded, "Maybe because it's a second class holiday." (*Id.*) Plaintiff filed a grievance regarding this statement. (*Id.*) He indicates that he was not interviewed on the grievance, but that non-party Sergeant Baker and Defendant Mackey responded to the grievance. (*Id.*)

Plaintiff alleges that afterwards, he "started having issues with unit staff about cleaning his cell." (*Id.*) He indicates that on March 4, 2023, Defendant Peterson "took the mop from in front of [Plaintiff's] cell" prior to Plaintiff being able to use it, even though other inmates had cleaned their cells. (*Id.*) Plaintiff wrote a letter to Defendant Pelky about this incident. (*Id.*) He also filed a grievance. (*Id.*)

On March 9, 2023, Plaintiff wrote to non-party Warden Burgess "addressing the issue of being denied cleaning supplies based on retaliation." (*Id.*)

On May 3, 2023, Defendants Schultz and Hansen denied Plaintiff access to the court. (*Id.*) Plaintiff filed a grievance. (*Id.*) Plaintiff received a response to the grievance on May 8, 2023. (*Id.*, PageID.9.)

Plaintiff filed a grievance against Defendants Schultz and Broin on May 17, 2023, after they conducted a search of Plaintiff's cell. (*Id.*) Plaintiff contends the search was conducted "in retaliation for the grievance" Plaintiff wrote against Defendants Schultz and Hansen. (*Id.*)

On May 17, 2023, Defendant Schultz issued Plaintiff a class III misconduct ticket for contraband (a sponge). (*Id.*) The misconduct ticket was reviewed by Defendant Fisk. (*Id.*) Defendant Pelky held a hearing on May 19, 2023. (*Id.*) Plaintiff "submitted a defense," but Defendant Pelky told Plaintiff that he could leave. (*Id.*) Plaintiff received the findings on May 26, 2023. (*Id.*) His appeal of the misconduct outcome was "returned without action" on June 6, 2023. (*Id.*)

On May 24, 2023, Plaintiff was called to the counselor's office, where non-party Sergeant Radamaker reviewed a class II misconduct ticket for being out of place. (*Id.*) The ticket indicated that the violation occurred on May 5, 2023. (*Id.*) The ticket was written by Defendant Bassett. (*Id.*, PageID.15.) Plaintiff contends that this misconduct was issued in retaliation for his grievance against Defendants Schultz and Broin concerning the search of Plaintiff's cell. (*Id.*, PageID.9–10.)

On May 26, 2023, Plaintiff filed a grievance "addressing the retaliatory conduct" of Defendants Schultz, Fisk, and Pelky, relating to the class III misconduct ticket for contraband. (*Id.*, PageID.10.) Defendant Bassett returned the grievance to Plaintiff, stating that it was "vague as written." (*Id.*) On May 24, 2023, Plaintiff wrote a letter to non-parties Warden Burgess and MDOC Director Heidi Washington "addressing the previously stated issues." (*Id.*)

Also on May 26, 2023, Plaintiff received Defendant Pelky's findings regarding the class III misconduct ticket. (*Id.*) Plaintiff wrote a letter to Defendant Pelky asking for an appeal form and documentation related to the charged misconduct. (*Id.*) Plaintiff received the appeal form but wrote another letter to Defendant Pelky asking for all documentation. (*Id.*)

On May 30, 2023, Plaintiff wrote another letter to Warden Burgess "seeking clarification of [the] cleaning schedule where Plaintiff was still being denied cleaning supplies." (*Id.*)

On May 31, 2023, Defendant Mackey conducted a hearing regarding the class II misconduct ticket charging Plaintiff with being out of place. (*Id.*) Plaintiff submitted his defense and argued that the misconduct had been written in a conclusory fashion and was not issued until 21 days after the alleged violation. (*Id.*) According to Plaintiff, Defendant Mackey "became unhinged and stormed out." (*Id.*) Plaintiff wrote a grievance about the matter, which Defendant Bassett rejected. (*Id.*, PageID.10–11.)

On June 13, 2023, Plaintiff received a response to his appeal of the class III misconduct and wrote Warden Burgess "seeking correction of the erroneous ruling." (*Id.*, PageID.10.)

On July 25, 2023, Defendants Benson and Forton were working in Plaintiff's unit. (*Id.*, PageID.11.) Prior to count, inmate Nicholas King gave a JPay cord belonging to inmate Michael Calvin to Plaintiff. (*Id.*) Plaintiff slid the cord under inmate Calvin's cell door. (*Id.*) Plaintiff went to his cell and found that the door was "on back-lock." (*Id.*) Defendant Forton told Plaintiff to report to the bubble, and Plaintiff did so. (*Id.*) Defendant Benson asked for Plaintiff's ID Card. (*Id.*) Defendant Benson read Plaintiff's name and said, "[You're] grievance guy." (*Id.*) Defendant Benson told Plaintiff that he would be getting a ticket. (*Id.*)

Plaintiff asked inmates King and Calvin if they had received misconducts; they responded they had not. (*Id.*) Inmate King spoke to Defendant Benson and asked if he would be receiving a misconduct. (*Id.*) Defendant Benson responded, "No, I got the one I wanted." (*Id.*)

Plaintiff alleges that he received a misconduct, which he was reviewed by Defendant Forton. (*Id.*) The misconduct charged Plaintiff with "passing," which Plaintiff defines as prohibiting the passing of items from prisoner to prisoner or from cell to cell. (*Id.*, PageID.16.)

Defendant Forton told Plaintiff that Defendant Benson had told him to offer Plaintiff 3 days. (*Id.*, PageID.11.) Plaintiff contends that Defendant Benson should not have been involved in the review because she wrote the misconduct. (*Id.*) Plaintiff argues that Defendants Benson and Forton conspired to retaliate against Plaintiff for writing a grievance. (*Id.*, PageID.12.) When Plaintiff refused to plead guilty to the misconduct and asked for a hearing, Defendant Forton said, "It's going to be more days." (*Id.*)

Defendant Clark held a hearing on the misconduct on July 27, 2023. (*Id.*) Defendant Clark read the misconduct and said, "We reviewed the camera, and you did it, and you're getting six days." (*Id.*) Defendant Clark went into the bubble, and Plaintiff heard him say to Defendant Schultz, "He requested a grievance [so] I'm giving him eight days." (*Id.*) Defendant Clark stated in the class III findings that "Prisoner Nunnally stated that if I did not throw out the ticket that he would write a grievance on me." (*Id.*)

A few hours later, Plaintiff was called to the counselor's office, where he was reviewed on a class II misconduct ticket written by Defendant Clark. (*Id.*) The ticket charged Plaintiff with insolence and stated that Plaintiff told Defendant Clark the following during his misconduct hearing: "If you don't throw that ticket out imma write a grievance on your ass, and you can kiss your bitch ass job goodbye." (*Id.*) Plaintiff contends this misconduct was issued "for the belief that [P]laintiff was going to engage in protected conduct." (*Id.*)

On August 21, 2023, non-party Officer Murtland called Plaintiff to the bubble, handed him a duffel bag, and told him to pack his property. (*Id.*, PageID.13.) The next day, Plaintiff "was transferred back across the [b]ridge" to URF. (*Id.*) Plaintiff alleges he was transferred "in retaliation for the writing of grievances for clear violations of policy directive." (*Id.*) He indicates

that Defendant Erway signed the transfer order and, therefore, "conspired with his subordinate to retaliate against Plaintiff for the filing of grievances." (*Id.*, PageID.18.)

Plaintiff goes on to reference that non-party Officer Clevo retaliated against him by returning a pair of weightlifting gloves Plaintiff had ordered. (*Id.*) Plaintiff argues that he was entitled to a hearing, and that he had to "write several letters to find that the gloves had been returned at cost to Plaintiff." (*Id.*)

Based on the foregoing, Plaintiff alleges that Defendants' conduct violated his First Amendment right to be free from retaliation. He also alleges violations of Article I, Section 17 of the Michigan Constitution. (*Id.*, PageID.19.) The Court also construes Plaintiff's complaint to assert: (1) First Amendment access to the courts claims; (2) Fourteenth Amendment due process claims premised upon the allegedly false misconducts and the deprivation of Plaintiff's weightlifting gloves; (3) Fourteenth Amendment equal protection claims; (4) claims regarding the handling and processing of Plaintiff's grievances; and (5) civil conspiracy claims. Plaintiff seeks injunctive relief in the form of an order directing the MDOC "to remove all misconduct[s] relating to the above acts and conduct, [as well as] any negative e-mails." (*Id.*) He also seeks compensatory, punitive, and nominal damages. (*Id.*)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

### A.    Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### 1.    Official Capacity Claims

As noted above, Plaintiff sues Defendants in both their official and personal capacities. Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual, an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A suit against an

individual in his official capacity is equivalent to a suit brought against the governmental entity:

in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews

v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under

the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or

Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State

Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782

(1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly

abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979),

and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*,

803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for

the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit

under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir.

2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369

F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks damages, as well as injunctive relief in the form of an order directing

the MDOC "to remove all misconduct[s] relating to the above acts and conduct, [as well as] any

negative e-mails." (Compl., ECF No. 1, PageID.19.) Official capacity defendants, however, are

absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of

Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore, will dismiss Plaintiff's

claims for monetary damages against Defendants in their official capacities.

An official capacity action seeking injunctive relief constitutes an exception to sovereign

immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh

Amendment immunity does not bar prospective injunctive relief against a state official).

Importantly, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Here, Plaintiff is no longer confined at ECF. The Sixth Circuit has held that transfer to another correctional facility moots a prisoner's claims for declaratory and injunctive relief. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Underlying this rule is the premise that such relief is appropriate only where a plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *id.*; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

Although Plaintiff is no longer confined at ECF, he seeks injunctive relief in the form of expungement of the various misconducts referred to in his complaint. As discussed *infra*, Plaintiff has adequately pled First Amendment retaliation claims against Defendants Benson and Clark, as well as a Fourteenth Amendment equal protection claim against Defendant Benson, based upon the issuance of a class III "passing" misconduct and a class II insolence misconduct. For purposes of Plaintiff's official capacity claim, despite Plaintiff's transfer to a new correctional facility,

Defendants would still be liable for prospective relief in the form of expungement of the disciplinary convictions.

Even though Plaintiff seeks relief that is characterized as prospective, his official capacity claims against Defendants are duplicative because, as set forth *supra*, official capacity claims are equivalent to suits brought against the governmental entity—here, the MDOC. In his complaint, Plaintiff alleges that Defendant Benson was the officer responsible for issuing the class III "passing" misconduct, and that Defendant Clark was responsible for issuing the class II insolence misconduct. Accordingly, the Court will allow Plaintiff's official capacity claims seeking expungement to proceed against Defendants Benson and Clark. The Court will dismiss Plaintiff's official capacity claims seeking the same relief against the remaining Defendants as redundant.[1]

### 2.      Personal Capacity Claims

#### a.      Claims Against Defendant Cloust

Although Plaintiff has named Assistant Deputy Warden Cloust as a Defendant, he makes no allegations against Cloust. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of

---

[1] To the extent Plaintiff seeks injunctive relief against Defendants in their personal capacities, all claims seeking such relief, except for Plaintiff's claims against Defendants Benson and Clark for expungement of his disciplinary convictions, will be dismissed for the same reasons set forth above.

specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Plaintiff fails to even mention Defendant Cloust in the body of his complaint. His allegations, therefore, fall far short of the minimal pleading standards set forth in the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 8 (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief"). The Court, therefore, will dismiss Plaintiff's claims against Defendant Cloust.

### b.    First Amendment Claims

### (i)    Retaliation Claims

Plaintiff alleges that the remaining Defendants retaliated against him, in violation of the First Amendment, in various ways because of Plaintiff's grievance activity.

In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory

conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Plaintiff alleges that the various retaliatory acts occurred because he either filed grievances or threatened to file a grievance. Plaintiff, therefore, has adequately alleged protected conduct for purposes of his retaliation claims.[2] *See Smith*, 250 F.3d at 1037; *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding

---

[2] Plaintiff suggests that his grievance concerning Defendant Fisk's comment regarding Martin Luther King, Jr. Day was the impetus for all of the alleged retaliatory acts. An inmate has a right to file non-frivolous grievances. *See Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018). The Sixth Circuit has suggested "that a prisoner's grievance is frivolous when the underlying grievance itself is *de minimis*." *Id.* at 264 (collecting cases). Here, the Court notes that Plaintiff's grievance concerning Defendant Fisk's comment may be potentially frivolous. Nevertheless, Plaintiff has set forth facts concerning other non-frivolous grievances that he filed, thereby satisfying the first element for his retaliation claims.

that a prisoner engaged in protected conduct by *threatening* to file a grievance). The Court considers Plaintiff's allegations regarding the second and third elements for each implicated Defendant below.

### a.      Defendant Fisk

Plaintiff's sole allegations concerning Defendant Fisk are that on January 16, 2023, Defendant Fisk was working in Plaintiff's housing unit and referred to Martin Luther King, Jr. Day as a "second class holiday." (Compl., ECF No. 8.) Plaintiff filed a grievance regarding Defendant Fisk's statement. (*Id.*) According to Plaintiff, "all of the retaliatory conduct stems from Plaintiff's contact with Defendant Fisk on January 16, 2023." (*Id.*, PageID.13.)

Plaintiff's complaint, however, is devoid of facts suggesting that Defendant Fisk took any adverse action in response to any protected conduct engaged in by Plaintiff. Plaintiff himself admits that he wrote the first grievance referenced in his complaint **after** Defendant Fisk made his comment about Martin Luther King, Jr. Day. Accordingly, Plaintiff's First Amendment retaliation claim against Defendant Fisk will be dismissed.

### b.      Defendant Peterson

Next, Plaintiff contends that Defendant Peterson retaliated against him on March 4, 2023, when Defendant Peterson took a mop from in front of Plaintiff's cell prior to Plaintiff being able to use it, even though other inmates had cleaned their cells. (Compl., ECF No. 1, PageID.8.)

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the

14

defendant's conduct is "capable of deterring a person of ordinary firmness"; the plaintiff need not

show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).

Here, the Court does not agree with Plaintiff that Defendant Peterson's one-time act of

taking the mop away from Plaintiff's cell before Plaintiff could use it rises to the level of adverse

action. *See, e.g.*, *Burgos v. Canino*, 358 F. App'x 302, 307 (3d Cir. 2009) (discussing that in "an

emergency situation within the prison," the defendant's refusal to provide the prisoner-plaintiff

with "cleaning supplies or to restore running water to his cell after his cell block flooded" resulted

in "temporary inconveniences" that "did not amount to retaliation"); *Newmones v. Ransom*,

No. 1:21-cv-276, 2022 WL 4536296, at *5 (W.D. Pa. Sept. 29, 2022) (determining that "[t]he

deprivation of cleaning supplies, shows, and recreation [for two days] are *de minimis*

inconveniences and not adverse actions"). For that reason alone, the Court will dismiss Plaintiff's

First Amendment retaliation claim against Defendant Peterson.

### c. Denial of Access to the Courts

Plaintiff's sole allegation concerning Defendant Hansen is that on May 3, 2023, Defendants

Hansen and Schultz denied Plaintiff access to the courts. (Compl., ECF No. 1, PageID.8.) Plaintiff

suggests they did so because of his prior grievances against Defendants Fisk and Peterson. (*Id.*)

As discussed *infra*, Plaintiff provides no facts regarding how he was allegedly denied

access to the courts. To the extent Defendants Hansen and Schultz denied Plaintiff access to the

law library on May 3, 2023, the Sixth Circuit has concluded that being denied access to the law

library on one occasion is de minimis conduct that does not constitute adverse action. *See Meeks*

*v. Schofield*, 625 F. App'x 697, 701–02 (6th Cir. 2015). Furthermore, Plaintiff alleges no *facts*

from which the Court could infer that Defendants Hansen and Schultz denied him access to the

courts because of Plaintiff's protected conduct. Plaintiff filing his grievances against Defendants

Peterson and Fisk before May 3, 2023 does not automatically show retaliation. *See Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews"); *cf. Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004) (noting that "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive"). The Court, therefore, will dismiss Plaintiff's First Amendment retaliation claims against Defendants Schultz and Hansen premised upon their denial of access to the courts on May 3, 2023.

### d.      *Cell Search and Resulting Misconduct*

Next, Plaintiff contends that on May 17, 2023, Defendants Schultz and Broin "executed a retaliatory search of Plaintiff's cell." (Compl., ECF No. 1, PageID.9.) He alleges the search was conducted because of his prior grievance against Defendants Schultz and Hansen. (*Id.*) Plaintiff avers further that Defendant Schultz issued him a class III misconduct ticket for contraband (a sponge). (*Id.*)

A cell search may be considered sufficiently adverse to satisfy the adverse action requirement of *Thaddeus-X*, where the search leaves the cell in disarray and results in the confiscation or destruction of materials. *See Bell*, 308 F.3d at 605–06 (citing *Walker v. Bain*, 257 F.3d 660, 664 (6th Cir. 2001)). Furthermore, the issuance of a misconduct charge can be considered adverse action. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007); *see also Hill*, 630 F.3d at 474 (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse").

Here, Plaintiff alleges only that a sponge was taken out of his cell. Plaintiff suggests that the May 17, 2023 cell search occurred about two weeks after he submitted a grievance concerning

Defendants Schultz and Hansen denying him access to the courts on May 3, 2023. Plaintiff's complaint, however, is devoid of *facts* from which the Court could infer that Defendants Schultz and Broin searched his cell and that Defendant Schultz issued the class III misconduct ticket for contraband because of that grievance or because of any other grievance submitted by Plaintiff. Plaintiff fails to allege facts suggesting that Defendants Schultz and Broin were even aware of the grievances. Although temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" the United States Court of Appeals for the Sixth Circuit, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Compare Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), *and Briggs v. Westcomb*, 801 F. App'x 956, 960–61 (6th Cir. 2020) (holding that allegations of temporal proximity were sufficient where the filing of retaliatory misconduct by correctional officers occurred six days after Plaintiff filed a grievance against a medical provider, but only one day after the provider learned of the grievance), *with Hill*, 630 F.3d at 476 (discussing that the Sixth Circuit has been reluctant to find that temporal proximity alone shows a retaliatory motive). The Court, therefore, will dismiss Plaintiff's First Amendment retaliation claims against Defendants Schultz and Broin premised upon the May 17, 2023 cell search and issuance of the class III misconduct ticket for contraband.

### e.      *Defendants Pelky and Mackey*

In his complaint, Plaintiff appears to suggest that Defendant Pelky retaliated against him by refusing to consider his defense to the class III misconduct for contraband issued by Defendant Schultz. (Compl., ECF No. 1, PageID.14.) Plaintiff claims that on May 19, 2023, Defendant Pelky told Plaintiff that he could leave after Plaintiff submitted his written defense. (*Id.*) Plaintiff also

suggests that Defendant Pelky did not give him the documentation related to the misconduct so that he could properly appeal it. (*Id.*, PageID.10.)

Defendant Mackey conducted a hearing regarding the class II out of place misconduct issued to Plaintiff. (*Id.*) Plaintiff alleges that he submitted his defense to the charge and refused to plead guilty. (*Id.*) Plaintiff also asked to address certain procedural matters. (*Id.*) According to Plaintiff, Defendant Mackey "became unhinged and stormed out." (*Id.*)

This Court has noted that an individual maintaining his or her innocence and refusing to plead guilty to a misconduct is protected conduct. *See Throneberry v. Havenor*, No. 2:19-cv-264, 2020 WL 240993, at *8 (W.D. Mich. Jan. 16, 2020). Plaintiff, however, has failed to allege facts suggesting that Defendants Pelky and Mackey's conduct would "deter a person of ordinary firmness from exercising his constitutional rights." *Thaddeus-X*, 175 F.3d at 396. Moreover, Plaintiff merely alleges the ultimate fact of retaliation with respect to Defendants Pelky and Mackey. He fails to allege any *facts* to support his speculative beliefs that Defendants Pelky and Mackey acted as they did because of Plaintiff's protected conduct. Again, simply because one event precedes another does not automatically show retaliation. *See Coleman*, 474 F. App'x at 437. Plaintiff's conclusory allegations are insufficient for the Court to infer that Defendants Pelky and Mackey acted with a retaliatory motive. *See Skinner*, 89 F. App'x at 580. The Court, therefore, will dismiss Plaintiff's First Amendment retaliation claims against Defendants Pelky and Mackey.

### f.    *Defendant Erway*

Plaintiff suggests that Defendant Erway retaliated against him by having him transferred from ECF to URF. He alleges that Defendant Erway signed the transfer order and, therefore, "conspired with his subordinate to retaliate against Plaintiff for the filing of grievances." (Compl., ECF No. 1, PageID.18.)

Ordinarily, transfers from the general population of another prison do not typically constitute adverse actions. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases). However, transfer to administrative segregation or another prison's lock-down unit can be sufficient to constitute adverse action. *See Hill*, 630 F.3d at 474–75. Here, although Plaintiff alleges that he was transferred to URF from ECF, he does not allege any facts to suggest that he was transferred to administrative segregation or a lockdown unit at URF. Plaintiff is, therefore, unable to show that his transfer to URF constituted adverse action. For this reason alone, Plaintiff's retaliation claim against Defendant Erway is subject to dismissal.

### d.      Defendant Bassett

Next, Plaintiff suggests that Defendant Bassett retaliated against him for filing grievances by issuing the May 24, 2023, class II misconduct charging Plaintiff with being out of place on May 5, 2023. (Compl., ECF No. 1, PageID.14–15.) Again, the issuance of a misconduct ticket can be considered adverse action. *See Thomas*, 481 F.3d at 441; *see also Hill*, 630 F.3d at 474.

Here, however, Plaintiff merely alleges the ultimate fact of retaliation with respect to Defendant Bassett. Although Plaintiff suggests that the misconduct was written on the same day that Defendant Erway "signed Plaintiff's Step II grievance" (Compl., ECF No. 1, PageID.15), Plaintiff fails to allege any *facts* to support his speculative belief that Defendant Bassett issued the misconduct because of Plaintiff's grievances. Again, simply because one event precedes another does not automatically show retaliation. *See Coleman*, 474 F. App'x at 437. Plaintiff's conclusory allegations are insufficient for the Court to infer that Defendant Bassett issued the misconduct ticket out of retaliation. *See Skinner*, 89 F. App'x at 580. The Court, therefore, will dismiss Plaintiff's First Amendment retaliation claim against Defendant Bassett.

### e.    *Defendants Benson and Clark*

In his complaint, Plaintiff avers that Defendant Benson issued him a class III misconduct ticket for "passing," and that Defendant Clark issued him a class II misconduct ticket for insolence. As noted above, the issuance of misconduct tickets can be considered adverse action. *See Thomas*, 481 F.3d at 441; *see also Hill*, 630 F.3d at 474. Moreover, Plaintiff alleges that when he reported to Defendant Benson and showed her his ID card, Defendant Benson said, "Oh[, you're] grievance guy, you will be getting a ticket." (Compl., ECF No. 1, PageID.16.) She then issued Plaintiff the class II misconduct ticket. Similarly, Plaintiff avers that Defendant Clark issued the class III insolence ticket after Plaintiff threatened to write a grievance if Defendant Clark did not dismiss the class III misconduct ticket issued by Defendant Benson. He also contends that, with respect to the class III "passing' misconduct, Defendant Clark told Defendant Schultz: "He requested a grievance[, so] I'm giving him eight days." (*Id.*, PageID.12.) Given these allegations, Plaintiff's First Amendment retaliation claims against Defendants Benson and Clark may not be dismissed on initial review.

### f.    *Defendant Forton*

Plaintiff alleges that Defendant Forton reviewed the misconduct issued by Defendant Benson with Plaintiff. (Compl., ECF No. 1, PageID.11.) When Plaintiff refused to plead guilty and asked for a hearing, Defendant Forton stated, "It's going to be more days." (*Id.*, PageID.12.) Plaintiff argues this is "textbook 'retaliation.'" (*Id.*, PageID.16.)

As noted above, Plaintiff engaged in protected conduct by maintaining his innocence and refusing to plead guilty. *See Throneberry*, 2020 WL 240993, at *8. Plaintiff, however, fails to allege facts from which the Court could infer that Defendant Forton's statement that "It's going to be more days" rises to the level of adverse action. A specific threat of harm may satisfy the adverse-

20

action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g.*, *Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results). However, certain threats or deprivations are so *de minimis* that they do not rise to the level of constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542.

In this case, Defendant Forton's statement was unaccompanied by any actual conduct. Instead, it appears that Defendant Forton was merely expressing a belief that Plaintiff could face longer sanctions if he did not plead guilty and instead had a hearing on the misconduct. Notably, Defendant Forton was not the individual who conducted the hearing, and so he was not involved in whatever sanctions Plaintiff ultimately received. Given this, the Court concludes that Defendant Forton's behavior would not deter a person of ordinary firmness from exercising his or her First Amendment rights. *Cf. Hunter v. Palmer*, No. 1:17-cv-109, 2017 WL 1276762, at *11 (W.D. Mich. Apr. 6, 2017) ("Defendant DeMaeyer told Plaintiff that complaining would get him into a lot of trouble . . . . Such a vague threat of unspecified harm falls short of adverse action."). Accordingly, the Court will dismiss Plaintiff's First Amendment retaliation claim against Defendant Forton.

### g.    *Officer Clevo*

Near the end of his complaint, Plaintiff contends that non-party Officer Clevo deprived him of his property by returning a pair of weightlifting gloves that Plaintiff had ordered. (Compl., ECF No. 1, PageID.18.) Plaintiff suggests that this constitutes retaliation as well. (*Id.*) Although Plaintiff references Clevo as a defendant, he did not include this individual in the caption of his complaint, nor did he include Clevo in the list of his named Defendants. Thus, it does not appear that Plaintiff intended to proceed against Clevo in this action. Nevertheless, to the extent Plaintiff

intended to pursue a First Amendment retaliation claim against Clevo, he cannot maintain such a claim. Plaintiff's complaint is devoid of *facts* from which the Court could infer that Clevo was aware of Plaintiff's grievance activity and returned Plaintiff's weightlifting gloves to the vendor solely because of that protected conduct. Accordingly, any intended First Amendment retaliation claim against Officer Clevo will be dismissed.

### *i.    Summary*

In sum, all of Plaintiff's retaliation claims, with the exception of his claims against Defendants Benson and Clark, will be dismissed. Plaintiff may proceed on his First Amendment retaliation claims against Defendants Benson and Clark premised upon his allegations that they issued his misconducts because of his grievance activity.

### (ii)    Access to the Courts Claims

The Court has construed Plaintiff's complaint to assert First Amendment access to the courts claims against Defendants Schultz and Hansen premised upon his assertion that those individuals denied him access to the courts. (Compl., ECF No. 1, PageID.8.)

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391. Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (discussing that *Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Here, Plaintiff's complaint is devoid of any facts regarding an underlying cause of action or a lost remedy. Plaintiff simply states, in a conclusory manner, that Defendants Schultz and Hansen denied him access to the courts without explaining how they did so. Accordingly, any intended First Amendment access to the courts claims against Defendants Schultz and Hansen will be dismissed.

### 3.    Fourteenth Amendment Claims

The Court has construed Plaintiff's complaint to assert Fourteenth Amendment due process claims premised upon the allegedly false misconducts and the deprivation of Plaintiff's weightlifting gloves, as well as a Fourteenth Amendment equal protection claim premised upon the "passing" misconduct ticket issued by Defendant Benson.

### a.    Due Process—False Misconducts

In his complaint, Plaintiff references receiving four misconducts: (1) a class III misconduct for contraband; (2) a class II misconduct for being out of place; (3) a class III misconduct for "passing"; and (4) a class II misconduct for insolence. The Court has construed Plaintiff's complaint to assert Fourteenth Amendment due process claims premised upon his belief that these misconducts are false.

A prisoner's ability to challenge a prison misconduct conviction depends on whether the conviction implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. at 484, 487. Under MDOC Policy Directive 03.03.105, ¶ C (eff. Apr. 18, 2022), a class I misconduct is a "major" misconduct and class II and III misconducts are "minor" misconducts. The policy further provides

24

that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a class I misconduct. *Id.* ¶ DDDD.

As noted above, Plaintiff references receiving class II and III misconducts. The Sixth Circuit, however, has routinely held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and, therefore, do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).

Moreover, Plaintiff does not allege facts regarding the sanctions he received for each of these misconducts. He has attached a copy of the hearing report for the class III contraband ticket to his complaint. (ECF No. 1-1, PageID.37.) That report indicates that Plaintiff received 7 days' LOP. (*Id.*) Pursuant to MDOC Policy Directive 03.03.105, the "loss of privileges" sanction involves the loss of various privileges, such as access to the day room, exercise facilities, group meetings, "[o]ut of cell hobbycraft activities," the kitchen area, the general library (not including the law library), movies, music practice, and other "[l]eisure time activities." MDOC Policy Directive 03.03.105, Attach. E. However, where a stay longer than 30 days in segregation is not considered an atypical or significant hardship, *see Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010), it defies logic to suggest that the lesser penalties of loss of privileges and toplock for that duration could be atypical or significant. Sixth Circuit authority bears that out. *See Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (holding that a fourteen-day loss of privileges sanction did not implicate the due process clause); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (nine-month loss of package privileges did not impose an atypical and significant hardship); *Miles*

*v. Helinski*, No. 20-1279, 2021 WL 1238562, at *4 (6th Cir. Jan. 29, 2021) (five days' toplock and five days' loss of privileges fails to state a due process claim); *Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *3 (6th Cir. Nov. 9, 2017) (concluding that "thirty days' loss of privileges . . . did not implicate a protected liberty interest"); *Langford v. Koskela*, No. 16-1435, 2017 WL 6803554, at *3 (6th Cir. Jan. 24, 2017) (thirty days' toplock and thirty days' loss of privileges "does not amount to an 'atypical and significant hardship'").

Plaintiff fails to allege any facts showing that he was subjected to conditions which would implicate a liberty interest as result of any of the misconduct tickets that he received. Accordingly, any intended Fourteenth Amendment procedural due process claims premised upon the misconduct tickets will be dismissed.[3]

### b.      Due Process—Deprivation of Property

Near the end of his complaint, Plaintiff contends that non-party Officer Clevo deprived him of his property by returning a pair of weightlifting gloves that Plaintiff had ordered. (Compl.,

---

[3] To the extent Plaintiff intended to raise substantive due process claims regarding the alleged false misconducts, he fails to state such a claim. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). With respect to an allegedly falsified misconduct report, the Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X*, 175 F.3d at 378. Plaintiff's complaint, however, is devoid of any allegations from which the Court could infer that any of the named Defendants acted to frame Plaintiff. Moreover, Plaintiff's allegations fall short of demonstrating the sort of egregious conduct that would support a substantive due process claim.

ECF No. 1, PageID.18.) As noted *supra*, Plaintiff did not include Clevo in the caption of his complaint, nor did he include Clevo in the list of his named Defendants. Nevertheless, to the extent Plaintiff intended to pursue a Fourteenth Amendment due process claim against Clevo, he cannot maintain such a claim for the reasons set forth below.

Any intended due process claim against Clevo is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, state post-deprivation remedies are available to him. Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." MICH. COMP. LAWS § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not

allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his weightlifting gloves. Accordingly, any intended due process claim against Officer Clevo is subject to dismissal.

### c.    Substantive Due Process

Plaintiff's reference to the Fourteenth Amendment may also assert a substantive due process claim regarding the rewritten misconduct ticket. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). With respect to an allegedly falsified misconduct report, the Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X*, 175 F.3d at 378.  Plaintiff's complaint, however, is devoid of any allegations from which the Court could infer that any of the named Defendants acted to frame Plaintiff.

Moreover, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham*, 490 U.S. at 394) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x

911, 923 (6th Cir. 2013). In this case, the First and Eighth Amendments apply to Plaintiff's claims

for relief. Consequently, any intended substantive due process claims will be dismissed.

<strong>d.       Equal Protection</strong>

The Court has construed Plaintiff's complaint to assert a Fourteenth Amendment equal

protection claim premised upon his allegation that Defendant Benson issued him a misconduct

ticket for "passing," but did not issue the same ticket to inmates King and Calvin. (Compl., ECF

No. 1, PageID.11.)

The Equal Protection Clause prohibits discrimination by government actors which either

burdens a fundamental right, targets a suspect class, or intentionally treats one differently than

others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of

Richmond*, 641 F.3d 673, 681–82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d

291, 312 (6th Cir. 2005). A state practice generally will not require strict scrutiny unless it

interferes with a fundamental right or discriminates against a suspect class of individuals.

*Massachusetts Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).

Plaintiff's allegations do not implicate a fundamental right. Plaintiff instead suggests that

Defendant Benson treated him differently from inmates King and Calvin, despite the fact that they

too were involved in the "passing" incident. The Court, therefore, construes Plaintiff's complaint

to assert a "class of one" equal protection claim.

To state an equal protection claim in a class-of-one case, Plaintiff must show "intentional

and arbitrary discrimination" by the state; that is, [he] must demonstrate that [he] "has been

intentionally treated differently from others similarly situated and that there is no rational basis for

the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also

Nordlinger v. Hahn*, 505 U.S. 1, 10–11 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir.

2011). A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory."

*Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citing *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 791 (6th Cir. 2005)). "Unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors." *Loesel*, 692 F.3d at 462 (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210– 11 (10th Cir. 2004)).

The threshold element of an equal protection claim is disparate treatment. *See Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006))). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)); *see also Nordlinger*, 505 U.S. at 10; *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'").

Here, Plaintiff alleges that on July 25, 2023, inmate King gave Plaintiff a Jpay cord that belonged to inmate Calvin. (Compl., ECF No. 1, PageID.11.) Plaintiff slid the cord under inmate Calvin's cell door. (*Id.*) Defendant Benson subsequently told Plaintiff that he would be getting a misconduct ticket. (*Id.*) Plaintiff asked inmates King and Calvin if they had received misconduct tickets; they responded that they had not. (*Id.*) Plaintiff alleges that inmate King spoke to

Defendant Benson and asked if he would be receiving a ticket, and Defendant Benson responded, "No, I got the one I wanted." (*Id.*) Thus, Plaintiff sets forth that even though all three inmates were involved in the "passing" incident, he was the only one to receive a misconduct ticket. Given these allegations, the Court concludes that Plaintiff's Fourteenth Amendment class of one equal protection claim against Defendant Benson may not be dismissed on initial review.

### 4. Claims Related to Processing of Grievances

The Court has also construed Plaintiff's complaint to assert claims regarding several Defendants' handling of Plaintiff's grievances. The Court notes, however, that Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, the handling and rejection of his grievances did not deprive him of due process.

Moreover, Plaintiff's First Amendment right to petition the government was not violated by the rejection of his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State*

*Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding that the right to petition protects only the right to address government; the government may refuse to listen or respond).

Finally, the rejection of any of Plaintiff's grievances has not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis*, 518 U.S. at 355 (requiring actual injury); *Bounds*, 430 U.S. at 821–24. The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

In light of the foregoing, any intended claims premised upon the processing and rejection of Plaintiff's grievances will be dismissed.

### 5.    Civil Conspiracy Claims

Throughout his complaint, Plaintiff suggests that the named Defendants engaged in a conspiracy to violate his civil rights. The Court, therefore, has construed his complaint to assert civil conspiracy claims against Defendants.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565–66 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003).

Plaintiff provides no allegations regarding any agreement among any of these individuals, other than the fact that they are employed at ECF and all of them are employed by the MDOC. Plaintiff's allegations of conspiracy are wholly conclusory. He alleges no *facts* that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556

U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, any intended conspiracy claims under § 1983 will be dismissed.[4]

### B.    State Law Claims

In his complaint, Plaintiff suggests that Defendants' actions violated his rights under Article I, Section 17 of the Michigan Constitution. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertions that Defendants violated state law fail to state a claim under § 1983.

Further, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however,

---

[4] Any intended conspiracy claims also would be barred by the intracorporate conspiracy doctrine. The intracorporate conspiracy doctrine states that "if all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Ed.*, 926 F.2d 505, 510 (6th Cir. 1991). Initially applied to claims under 42 U.S.C. § 1985(3), *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839–40 (6th Cir. 1994) (quoting *Hull*, 926 F.2d at 510), the Sixth Circuit has concluded that the intracorporate conspiracy doctrine applies to claims under § 1983 as well, *Jackson v. City of Cleveland*, 925 F.3d 793, 817–19 (6th Cir. 2019). As a result, unless members of the same collective entity (such as the MDOC) are acting outside the scope of their employment, they are deemed to be one collective entity and not capable of conspiring. *Id.* at 819; *see also Novak v. City of Parma*, 932 F.3d 421, 436–37 (6th Cir. 2019) (same). Here, Defendants are members of the same collective entity—the MDOC. Plaintiff does not even allege, much less show, that Defendants were acting outside the scope of their employment. To bring claims outside of the intracorporate conspiracy doctrine, a plaintiff must allege that the defendants "acted other than in the normal course of their corporate duties." *Johnson*, 40 F.3d at 840. Plaintiff's complaint is devoid of facts suggesting that Defendants were acting outside the normal course of their duties, however improperly he believes they may have been exercising those duties.

remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)).

Because Plaintiff's federal claims against Defendants Fisk, Peterson, Schultz, Hansen, Broin, Forton, Pelky, Mackey, Bassett, Cloust, and Erway have been dismissed, the Court will dismiss Plaintiff's state law claims against these individuals without prejudice. Because Plaintiff continues to have pending federal claims against Defendants Benson and Clark, the Court will not decline to exercise supplemental jurisdiction over Plaintiff's state law claims against those two Defendants at this time.

## <u>Conclusion</u>

Having conducted the review required by the PLRA, the Court determines that Plaintiff's federal claims against Defendants Fisk, Peterson, Schultz, Hansen, Broin, Forton, Pelky, Mackey, Bassett, Cloust, and Erway will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims against Defendants Fisk, Peterson, Schultz, Hansen, Broin, Forton, Pelky, Mackey, Bassett, Cloust, and Erway will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

Moreover, to the extent Plaintiff intended to name Officer Clevo as a Defendant, Officer Clevo will be dismissed for failure to state a claim. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Benson and Clark: (1) Plaintiff's official capacity claims for damages; (2) Plaintiff's Fourteenth Amendment due process claims; and (3) Plaintiff's civil conspiracy claims.

The following claims against Defendants Benson and Clark remain: (1) Plaintiff's official and personal capacity claims seeking expungement of his class III "passing" misconduct and class II insolence misconduct; (2) Plaintiff's First Amendment retaliation claims; (3) Plaintiff's

Fourteenth Amendment equal protection claim against Defendant Benson; and (4) Plaintiff's state law claims against Defendants Benson and Clark.

      An order consistent with this opinion will be entered.


Dated:   __March 29, 2024__             __/s/ Jane M. Beckering__
                                                Jane M. Beckering
                                               United States District Judge